IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAMELA SUE HARBISON | ) |
| Plaintiff, | ) ) ) |
| -vs- | ) )    Civil Action 19-671 |
| ANDREW M. SAUL, | ) ) ) |
| Defendant. | ) |

AMBROSE, Senior District Judge.

## **OPINION AND ORDER**

### **Synopsis**

Pamela Sue Harbison ("Harbison") seeks review of a decision denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act. Harbison filed her application in April 2016 alleging an onset of disability on October 10, 2012. (R. 20) Her claim was denied initially. Following a hearing during which both Harbison and a vocational expert ("VE") testified, the ALJ denied benefits. Ultimately this appeal followed. The parties have filed Cross Motions for Summary Judgment. *See* ECF Docket Nos. 17 and 19. For the reasons set forth below, the ALJ's decision is affirmed.

### **Opinion**

I.  **Standard of Review**

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court to review the transcripts and records on which a determination of the Commissioner is

1

based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson,* 402 U.S. at 390, 91 S. Ct. 1420.

A district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.,* 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are

supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

II. The ALJ's Decision

The ALJ denied benefits at the fourth step of the analysis. More specifically, at step one, the ALJ found that Harbison has not engaged in substantial gainful activity between her alleged onset date and December 31, 2017, her date last insured. (R. 22) At step two, the ALJ concluded that Harbison suffers from the following severe impairments: back strain, left arm nerve damage, osteoarthritis of the knees and a sleep disorder. (R. 22-24) At step three, the ALJ determined that Harbison did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24) Between steps three and four, the ALJ decided that Harbison had the residual functional capacity ("RFC") to perform light work with certain restrictions. (R. 24-29) At the fourth step of the analysis, the ALJ concluded that Harbison was able to return to her past relevant work. (R. 29-31) That is, Harbison was capable of performing her work as a census enumerator and customer service representative.

III. Discussion

(1) Subjective Complaints of Pain

Harbison takes issue with the ALJ's evaluation of her subjective complaints of pain. As the ALJ stated, she must follow a two-step process when assessing pain: first, she must determine whether there is a medical impairment that could reasonably be expected to produce the claimant's pain or other symptoms; and, second, she must

3

evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. (R. 25) Pain alone does not establish disability. 20 C.F.R. §§ 404.1529(a), 416.929(a). Allegations of pain must be consistent with objective medical evidence and the ALJ must explain the reasons for rejecting non-medical testimony. *Burnett v. Comm'r. of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000). In evaluating a claimant's statements regarding pain, the ALJ will consider evidence from treating, examining and consulting physicians; observations from agency employees; and other factors such as the claimant's daily activities; descriptions of the pain; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications; treatment other than medication; and other measures used to relieve the pain. 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p. I must defer to the ALJ's determinations, unless they are not supported by substantial evidence. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), *cert. denied*, 420 U.S. 931 (1975).

     Here, the ALJ specifically stated that she considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p. " (R. 25) Moreover, the ALJ followed the proper method in assessing Harbison's symptoms and pain. That is, she first determined whether there was an underlying medically determinable physical or mental impairment that could reasonably be expected to produce Harbison's pain or other symptoms, then she evaluated the intensity, persistence and limiting effects of those symptoms. (R. 25-29) The ALJ properly compared the medical evidence and other evidence of record,

including activities of daily living, the intensity of pain, factors that precipitate and aggravate the symptoms, the effectiveness of medication, and treatment other than medication, and found them not to be entirely consistent. (R. 26)

For instance, despite complaints of disabling back pain, Harbison's 2012 lumbar spine MRI showed no disc herniation and only minimal spinal stenosis with no definitive nerve root impingement. (R. 73-37)  A January 2015 MRI of the lumbar spine similarly revealed "no evidence of a significant disc bulge or herniation." (R. 752) A thoracic spine MRI indicated no "disc herniation or significant spinal stenosis." (R. 751) Harbison participated in an extended course of chiropractic care and those records indicate that Harbison displayed normal strength, sensation, reflexes and gait. (R. 26) Her examinations were cursory in nature and she did not exhibit significant edema, effusion, deformity or atrophy. (R. 26) Additionally, Harbison reported that she was improving and that her medication was working. (R. 26) Indeed, Harbison decreased her chiropractic appointments from 2-3 times per week to once a week. (R. 322, 337, 367)

Harbison's treatment for pain management similarly revealed unremarkable physical examinations. (R. 27) She displayed full strength, a smooth and even gait, no evidence of edema, negative straight leg raises and functional range of motion. (R. 27) She was able to garden while sitting on a stool throughout this time and the examiners recommend that she wear a back brace for prolonged sitting and standing. (R. 27) Harbison also reported a reduction of pain following S1 injections. (R. 27, 322) She experienced relief relative to her low back pain following the implantation of a spinal cord stimulator. (R. 27-28, 843) Indeed, by February 2015 her physician instructed that, in two weeks she could gradually resume her normal activities. (R. 28)

With respect to her knee pain, the ALJ identified records indicating that Harbison presented with "no effusion or instability and good strength, sensation and range of motion." (R. 28) Harbison responded well to injections. (R. 28, 780-92) Harbison's activities of daily living also support the ALJ's findings. Specifically, Harbison indicated that she was swimming, doing yard work, walking for exercise, "doing more outside and around the house" and had "pain free" days. (R. 27)

Harbison cites to different evidence of record in support of her request for remand. But the standard is not whether there is evidence to establish the claimant's position, but, rather, is whether there is substantial evidence to support the ALJ's finding. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989). Because I find that substantial evidence of record supports the ALJ's decision in this regard, remand is not warranted.

(2) Medical Opinions

Next, Harbison contends that the ALJ improperly weighed medical opinions. For claims such as Harbison's that were filed before March 27, 2017, a treating physician's opinion should be given "controlling weight" provided that the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence of record. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). *See also, Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2010). "The ALJ may not reject a physician's findings unless she first weighs the findings against other relevant evidence and explains why certain evidence has been accepted and other evidence rejected." *Scandone v. Astrue*, Civ. No. 05-4833, 2011 WL 3652476, at *7 (E.D. Pa. Aug. 18, 2011). Of course, "[t]he law is very clear … that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity." *Chandler*

6

*v. Commissioner of Social Security*, 667 F.3d 356, 361 (3d Cir. 2011), *quoting*, *Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011). Additionally, opinions proffered by state agency medical and psychological consultants merit significant consideration as well because they are considered experts in the Social Security disability programs. *Chandler*, 667 F.3d at 361, *citing*, 20 C.F.R. §§ 404.1527(f), 416.927(f).

In the event of conflicting medical evidence, the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3rd Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999)). However, "where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § 416.927(d)(2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

*Becker v. Comm'r. of Soc. Sec. Admin.*, Civ. No. 10-2517, 2010 WL 5078238, at * 5 (3d Cir. Dec. 14, 2010). Although the ALJ may choose whom to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r. of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009).

Here, Harbison contends that the ALJ erred in failing to follow the standard above with respect to the opinion rendered by Dr. Michael Toshok, her pain specialist.[1]

---

[1] Harbison does argue that the ALJ erred in giving "significant weight" to the opinion rendered by Dr. Kar, a state agency medical consultant. Harbison contends that the ALJ's decision in this regard was erroneous because the opinion was authored prior to the submission of additional evidence. This argument is unconvincing. The Third Circuit Court has noted that, "because state agency review precedes ALJ review, there is always some time lapse between the consultant's report and the ALJ hearing and decision. The Social Security regulations impose no limit on how much time may pass between a report and the ALJ's reliance on it." *Chandler v. Commissioner v. Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).

Specifically, Harbison contends that the ALJ's failure to adopt Toshok's prohibition regarding stooping is erroneous and mandates remand. I disagree. Assuming for purposes of argument only, that the ALJ should have accepted Toshok's finding that Harbison could never stoop, any error is harmless. The ALJ determined that Harbison was able to perform her past relevant work as a census enumerator (DOT #205.367-054) and a customer service representative (DOT #241.367-014). Neither position requires stooping. *See* 1991 WL 672252 ("Stooping: Not Present – Activity or condition does not exist") and 1991 WL 671725 ("Stooping: Not Present – Activity or condition does not exist").

Harbison also challenges the ALJ's failure to discuss limitations in the use of her left upper extremity as observed by Toshok. Again, assuming for purposes of argument only that the ALJ erred in this regard, any such error was harmless. The ALJ made an alternate finding at the fifth step of the analysis that, even if Harbison was precluded from using her left hand, she would be able to work as a toll collector, ticket seller, survey worker, and telephone solicitor. (R. 31) As the ALJ noted, "[t]he vocational expert explained these positions could be performed with one arm." (R. 31)

The remainder of Harbison's arguments relate to the ALJ's rejection of Toshok's findings regarding standing, walking and lifting restrictions. Here, the ALJ considered all of the relevant factors in determining how much weight to afford the medical opinions. In particular, the ALJ gave "some weight" to Toshok's opinion.[2] (R. 28) Specifically, the

---

[2] Toshok opined that Harbison could occasionally lift and carry up to 10 pounds and could sit, stand and walk for 15 minutes at a time without interruption. (R. 964-65) Citing Harbison's need to frequently change positions, Toshok was unable to project how many total minutes in an 8-hour workday she could sit, stand and walk. (R. 965) Toshok found she could continuously use her right hand and right foot but had some limitations with respect to her left hand and left foot. (R. 966) Toshok opined that Harbison was never to climb ladders, stoop, kneel, crouch, or crawl; could occasionally climb stairs and ramps and could frequently balance. (R. 967) Toshok explained that Harbison could not tolerate exposure to unprotected heights or vibrations, that she could occasionally operate a motor vehicle and be

ALJ found that Toshok's postural and environmental limitations were generally consistent with the medical record. (R. 28) Yet the ALJ concluded that Toshok "appears to overestimate the claimant's limitations relative to lifting, sitting, standing, [and] walking as the record reveals essentially unremarkable physical examination and she reported significant relief with a spinal cord stimulator and Euflexxa injections." (R. 28-29) Inconsistency with medical records is an appropriate reason for discounting opinion evidence. See *Scouten v. Comm'r. of Soc. Sec.*, 722 Fed. Appx. 288, 290 (3d Cir. 2018) (*citing*, 20 C.F.R. 404.1527(c)(2)). Again, the task before me is not one of *de novo* review. I must consider whether substantial evidence supports the ALJ's decision, not whether substantial evidence supports the claimant's position. "Substantial evidence could support both Plaintiff's claims and the ALJ's findings because substantial evidence is less than a preponderance." *Weidow v. Colvin*, Civ. No. 15-765, 2016 WL 5871164, at * 18 (M.D. Pa. Oct. 7, 2016), *citing*, *Jesurum v. Sec'y. of U.S. Dep't. of Health & Human Services*, 48 F.3d 114, 117 (3d Cir. 1995). As discussed above in addressing Harbison's subjective complaints of pain, substantial record evidence supports the ALJ's findings regarding Harbison's ability to stand, walk and lift. Consequently, I find no basis for remand.

(3) Residual Functional Capacity

Here, the ALJ found that Harbison had the RFC to perform:

> Light work as defined in 20 C.F.R. 404.1567(b) except:

---

exposed to extreme cold, and could continuously tolerate exposure to moving mechanical parts, humidity and wetness, dust, odors and fumes, and extreme heat. (R. 968) Finally, he found that she could shop, travel without a companion, ambulate without assistance, use standard public transportation, climb a few steps at a reasonable pace with the use of a single hand rail, prepare a simple meal and feed herself, attend to her personal hygiene, and sort, handle and use paper. He found her unable to walk a block at a reasonable pace on rough or uneven surfaces. (R. 969)

> The claimant can lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently;
> The claimant can sit for 6 hours, stand for 4 hours and walk for 4 hours, shifting positions for up to 2 minutes each half hour;
> The claimant is right hand dominant and can occasionally operate hand/foot controls with left hand and foot;
> The claimant can never climb ladders, ropes, scaffolds, kneel or crawl and can occasionally balance, stoop and crouch;
> The claimant cannot work at unprotected heights, with moving mechanical parts and can occasionally operate a motor vehicle and tolerate weather, humidity, wetness, extreme cold, heat and vibration;
> The claimant must work where the pace of work is determined by the person, but general production requirements are met.

(R. 24-25) Substantial evidence of record supports the ALJ's findings in this regard.

Harbison's RFC argument largely is dependent upon the success of her contentions regarding the ALJ's assessment of opinion evidence and the evaluation of her complaints of pain. Indeed, she urges that "[t]he RFC formulation is inextricably tied both to the ALJ's assessment of medical opinion evidence and the claimant's self-described limitations." *See* ECF Docket No. 18, p. 2. As set forth elsewhere in this Opinion, Harbison has not raised compelling reasons for remand on these issues. Substantial evidence supports the ALJ's decisions regarding opinion evidence and the evaluation of Harbison's complaints of pain.

Consequently, I find no error on this issue.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAMELA SUE HARBISON ) | |
|     Plaintiff, ) | |
|   -vs- ) | Civil Action No. 19-671 |
| ) | |
| ANDREW M. SAUL, ) | |
| ) | |
|     Defendant. ) | |

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 24th day of April, 2020, it is hereby ORDERED that the Motion for Summary Judgment (Docket No. 19) is GRANTED and the Motion for Summary Judgment (Docket No. 17) is DENIED. It is further ORDERED that the Clerk of Courts mark this case "Closed" forthwith.

                                              BY THE COURT:

                                              <u>/s/ Donetta W. Ambrose</u>
                                              Donetta W. Ambrose
                                              United States Senior District Judge